This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**LARRY V. LAUGHLIN,**

Worker-Appellee/Cross-Appellant,

v.                                                    NO.  32,074

**CONVENIENT MANAGEMENT SERVICES,**
**INC. and ARGONAUT INSURANCE COMPANY,**

Employer/Insurer-Appellants/Cross-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Workers Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Worker-Appellee/Cross-Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Employer/Insurer-Appellants/Cross-Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

**{1}** Worker Larry Laughlin appeals from a compensation order entered pursuant to the Workers' Compensation Act (the Act), NMSA 1978, Sections 52-1-1 to -70 (1929, as amended through 2007). Worker makes eight arguments relating to the factual findings made by the Workers Compensation Judge (the WCJ). We affirm the WCJ on seven issues but hold that the WCJ's determination that Worker had a whole body impairment rating of 11% is not supported by substantial evidence. Accordingly, we remand for the entry of a modified compensation order.

**BACKGROUND**

**{2}** Worker suffered accidents on August 22, 2008 and September 14 or 30, 2008 while working for Employer. Worker suffered injuries to both his lower back and left testicle. He filed a complaint with the Workers' Compensation Administration (the WCA) on March 3, 2009, requesting temporary total disability benefits until he reached maximum medical improvement, and permanent partial disability benefits upon reaching maximum medical improvement.

**{3}** The parties entered a recommended resolution on May 7, 2009 that provided a $5000 payment to Worker and named Dr. Benito Gallardo as Worker's authorized treating physician. Dr. Gallardo examined Worker on May 6, 2009 and found a causal connection between Worker's injuries and the accidents on August 22, 2008 and September 14 or 30, 2008. When Employer refused to provide any temporary total

2

disability after Dr. Gallardo's report, Worker filed a second workers' compensation complaint. Employer rejected a second recommended resolution on September 29, 2009, and the claim entered the adjudication process. After a trial on the merits on December 22, 2011, the WCJ entered a compensation order on March 14, 2012. Employer appealed, and Worker filed this cross-appeal.

{4}     In this cross-appeal, Worker challenges several factual findings: (1) Dr. Basel Aswad was an unauthorized healthcare provider; (2) Worker was at maximum medical improvement from September 10, 2010 through December 21, 2011; (3) Worker's impairment rating for his back injury was 8%; (4) Worker was not entitled to a point for training or vocational pursuit pursuant to Section 52-1-26.3(D); (5) Worker's loss of physical capacity from his injuries was from heavy to light duty; and (6) Worker's whole body impairment rating was 11%. Worker also argues that he was entitled to specific findings and conclusions that (1) he is entitled to an updated MRI and psychological evaluation, and (2) Worker was entitled to treatment by a urologist in Las Cruces.

**STANDARD OF REVIEW**

{5}     "All workers' compensation cases are reviewed under a whole record standard of review." *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. When our review consists of reviewing a "WCJ's interpretation of statutory

requirements, we apply a de novo standard of review." *DeWitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341. We review the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320. "After we determine the meaning of the statutes, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *DeWitt*, 2009-NMSC-032, ¶ 14 (internal quotation marks and citation omitted). "Where the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 13 (internal quotation marks and citation omitted).

**AUTHORIZED HEALTHCARE PROVIDER**

**{6}** Worker argues that the WCJ erred in finding that Dr. Aswad was an unauthorized healthcare provider and in denying payment of Dr. Aswad's bill. Worker specifically challenges the WCJ's findings numbers 20-22, which provided that Dr. Aswad was an unauthorized healthcare provider and denied payment of his bill. In support, Worker points to testimony that he complained to a WCA ombudsman about the lack of medical treatment that Employer provided and that the omsbudman contacted the claim adjuster, who then authorized Worker to receive

4

treatment from Dr. Aswad. Worker therefore contends that Employer was required by the Act to pay Dr. Aswad's bill. *See* § 52-1-49(A) (requiring that "the employer . . . provide the worker in a timely manner reasonable and necessary health care services from a health care provider").

{7}    However, Worker, in challenging the finding that Dr. Aswad was not an unauthorized healthcare provider, fails to point out other evidence supporting the finding. Employer initially selected Dr. James Skee as Worker's authorized healthcare provider, and the record does not contain any indication Dr. Skee referred Worker to Dr. Aswad. Worker testified that Archbishop Thaddeus Standford recommended Dr. Aswad and that he decided to seek treatment from Dr. Aswad based on this recommendation. Based on this testimony, the WCJ's finding that Dr. Aswad was an unauthorized healthcare provider under the Workers Compensation Act is supported by substantial evidence. *See* § 52-1-49(G) ("If the worker continues to receive treatment or services from a health care provider rejected by the employer and not in compliance with the workers' compensation judge's ruling, then the employer is not required to pay for any of the additional treatment or services provided to that worker by that health care provider."); 11.4.4.11(C)(1) NMAC (12/31/2012) ("A referral by an authorized [healthcare provider] to another [healthcare provider] shall be deemed a continuation of the selection of the referring [healthcare provider]."). To

the extent that Worker's testimony that the claims adjuster authorized Dr. Aswad as an authorized healthcare provider provides conflicting testimony supporting Worker's position, it is the role of the factfinder to weigh conflicting evidence. *See Rodriguez v. La Mesilla Constr. Co.*, 1997-NMCA-062, ¶ 13, 123 N.M. 489, 943 P.2d 136 (stating that "we will not reweigh the evidence, even under the whole record standard of review" if there is conflicting evidence).

**UPDATED LUMBAR MRI AND PSYCHOLOGICAL EVALUATION**

{8}    Worker next argues that the WCJ erred in not including specific findings or conclusions ordering that Worker is entitled to an updated lumbar MRI and a psychological evaluation. Worker points to evidence supporting his position. The independent medical examination (IME) panel recommended an updated lumbar MRI in order to evaluate Worker's back injury and his need for surgery. Dr. Jose Reyna, the only orthopaedic physician to evaluate Worker's back injury, requested the MRI, and Dr. Gallardo concurred with the need for the updated MRI. The IME panel also stated that Worker was in need of a psychological evaluation due to depression and thoughts of suicide. Dr. Gallardo also concurred that Worker needed a psychological evaluation.

{9}    Employer does not dispute that the IME panel recommended an updated MRI scan of Worker's lower back and that Worker's back injury arose out of his

6

employment. However, Employer points out that the WCJ did find that Worker has a continuing need for medical care and treatment for his injuries, including his back injury. Under these findings and conclusions, Worker's authorized healthcare provider, Dr. Gallardo, could order an MRI scan of Worker's back if he deems that it is reasonable and necessary for Worker's medical care and treatment. *See* § 52-1-49(A) ("[A]s long as medical or related treatment is reasonably necessary, the employer shall . . . provide the worker in a timely manner reasonable and necessary health care services from a health care provider."). Worker did not present any evidence that Dr. Gallardo submitted a request for an MRI to Employer or that Employer denied such a request. Additionally, the WCJ did not issue any findings or conclusion that would affirmatively bar Dr. Gallardo from submitting a request for Worker to receive an updated lumbar MRI. Under these circumstances, the lack of a specific finding or conclusion ordering an updated MRI on Worker's back is not error.

{10} Employer also does not dispute that the IME panel recommended a psychological evaluation of Worker. However, Employer contends that Worker's depression did not become an issue until the IME on August 25, 2011 and has not been causally linked to any work-related condition. Indeed, the IME panel report concluded that "[s]ince our specialty is neither psychology nor psychiatry, the

causation of [Worker]'s possible depression needs to be addressed by the specialist." At the formal hearing, Worker testified that he disclosed that he was depressed at the IME to Dr. Julianna Garcia and said that the cause of his depression was the recent death of his dog, without mentioning any other cause including his work-related injuries. Dr. Gallardo testified that a referral to a psychologist would be appropriate to determine how much of Worker's depression is work-related. Worker testified that Dr. Gallardo has not referred Worker to a psychologist, and Worker has never asked Dr. Gallardo for a referral to a psychologist.

{11}     The WCJ did not err in not ordering a psychological evaluation in its findings and conclusions. First, Worker did not present any evidence that his depression was causally linked to his work-related injuries. *See* § 52-1-9(C) (stating that the right of compensation requires that "the injury or death is proximately caused by accident arising out of and in the course of his employment"). Second, as we have discussed, the WCJ did find that Worker has a continuing need for medical care and treatment for his injuries and nothing in the compensation order or findings and conclusions bars Dr. Gallardo from seeking authorization for a psychological evaluation if he deems it reasonably necessary for Worker's continuing need for medical care and treatment for Worker's work-related injuries. *See* § 52-1-49(A) ("[A]s long as medical or related treatment is reasonably necessary, the employer shall . . . provide the worker

8

in a timely manner reasonable and necessary health care services from a health care provider.").

**UROLOGIST IN LAS CRUCES**

{12}    Worker argues that he should be entitled to treatment by a urologist in Las Cruces, New Mexico and that, if necessary, Employer should be required to pay the urologist at his regular rates and in advance of treatment. Worker asserts that "due to the nature and extent of his scrotum injuries . . .; his residence in Deming, NM; his disability and resulting poverty; and his rather old and unreliable motor vehicle; it was unreasonable for [Employer] to provide urological treatment only in Albuquerque, NM." Worker contends that he has been unable to get urological treatment in Las Cruces "[d]ue to the unwillingness of urologists [in Las Cruces] to accept injured workers as patients due to [Workers' Compensation] insurers untimely and reduced payments[.]" However, Worker fails to cite to the record for any of these factual assertions, including that there are no urologists in Las Cruces that accept the Workers' Compensation fee schedule, untimely payments by insurers, or the age and condition of Worker's motor vehicle. On this basis alone, we reject Worker's contention. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to address an argument that relied on several factual assertions that were made without citation to the record). Additionally, Worker's

half-page conclusory argument fails to address or cite to the regulations governing allowable fees, reimbursements, billing dispute procedures, and cost containment under the Act. *See* 11.4.7.6 NMAC (8/30/2002). This Court will not address undeveloped or underdeveloped arguments on appeal. *Zhao v. Montoya*, 2012-NMCA-056, ¶ 17, 280 P.3d 918.

**MAXIMUM MEDICAL IMPROVEMENT**

{13} Worker argues that the WCJ erred by determining that Worker was at maximum medical improvement from September 10, 2010 through December 21, 2011, because Worker's injuries have not been timely and fully evaluated. Worker relies on the IME panel's recommendation of an updated MRI on Worker's back on August 25, 2011 to support his argument that Worker's back injury was not at maximum medical improvement. Additionally, without citation to the record and without arguing how it relates to the WCJ's determination of maximum medical improvement, Worker contends that Employer refused to provide treatment at Deming Urology Services, that all urologists in Las Cruces refuse to accept injured workers as patients, that he was forced to get urological treatment in Albuquerque, and that his first urologist terminated his services after Employer failed to pay the bill.

{14} The IME panel did not believe that Worker had reached maximum medical improvement for either his testicle injury or his back injury. However, when

reviewing a WCJ's factual findings, this Court "will not . . . substitute [its] judgment for that of the [WCJ]; although the evidence may support inconsistent findings, [this Court] will not disturb the [WCJ's] findings if supported by substantial evidence on the record as a whole." *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). Dr. Gallardo placed Worker at maximum medical improvement as of March 4, 2010 from his back injuries and assigned an 8% whole person impairment rating. Additionally, Dr. Gallardo testified at his deposition that Worker reached maximum medical improvement as of March 4, 2010 on his testicle injury if Worker was not going to have a surgical procedure to address the problem. At his second deposition, Dr. Gallardo testified that Worker's left testicle injury had reached maximum medical improvement on January 25, 2011, or that Worker reached maximum medical improvement on the date he decided not to have surgery to address the testicle injury or when he last saw a urologist. The WCJ found that Worker reached maximum medical improvement on September 10, 2010, which coincided with the last date Worker saw a urologist. Based on the evidence in the record, this determination was supported by substantial evidence.

**WHOLE BODY IMPAIRMENT RATING**

{**15**}     Worker next challenges the WCJ's finding of an 8% whole body impairment as a result of his back injury. Worker bases his argument on American Medical

11

Association guidelines that provide an impairment range of 15-23% for disk herniations at multiple levels and with documented residual radiculopathy. Dr. Gallardo testified that Worker has two levels of disc herniations and a likely L5 residual radiculopathy. Worker therefore contends that the 8% impairment rating is not supported by the record.

{16} However, again, Worker overlooks substantial evidence that supports the WCJ's determination. The pre-trial order contained the stipulation that Dr. Gallardo, as the authorized healthcare provider, assigned an 8% whole body impairment rating for the back injury. Although Dr. Gallardo believed that Worker had a residual radiculopathy on L5, he testified that he would need an electrodiagnositc study on Worker in order to definitely determine if Worker suffered from residual radiculopathy and that electrodiagnostic studies are needed to objectively show a radiculopathy. Dr. Gallardo testified that Worker never underwent an electrodiagnostic study to diagnose the radiculopathy.

{17} Worker does not point us to any evidence presented at the formal hearing contrary to Dr. Gallardo's impairment rating that would support a finding other than an 8% impairment rating or that Worker had been sufficiently diagnosed with a residual radiculopathy that would support a higher impairment rating. Under this

12

circumstance, we cannot say that the finding of an 8% impairment as a result of the back injury was unsupported by substantial evidence.

**VOCATIONAL PURSUITS**

{18} Worker next argues that he is entitled to one point for "training" or "vocational pursuit" pursuant to Section 52-1-26.3(D) because there are countless vocational pursuits that Worker cannot perform due to his work-related injuries and restrictions. The WCJ determined that Worker was capable of performing a specific vocational pursuit. Worker appears to argue that the proper construction of Section 52-1-26.3(D) only requires a worker to demonstrate that the worker can no longer perform the worker's pre-injury occupation or show that there is a reduction of job opportunities. However, Worker misconstrues Section 52-1-26.3.

{19} In *Medina v. Berg Construction, Inc.*, 1996-NMCA-087, ¶ 22, 122 N.M. 350, 924 P.2d 1362, this Court held that "the ordinary meaning of [Section 52-1-26.3] is that a worker who, at the time of his disability rating, is unable to return to any of his former occupations due to his disability should receive one point." Therefore, our inquiry becomes whether the evidence was sufficient to show that Worker "could no longer perform any of his prior occupations at or after the date of the hearing." *Rodriguez*, 1997-NMCA-062, ¶ 24.

{20}    Initially, we note that the WCJ was not specific regarding which of Worker's previous occupations he believes Worker is presently capable of performing, and the failure to include such specificity hinders appellate review. The WCJ determined that Worker demonstrated a specific vocation preparation level of five in the ten years prior to the formal hearing. Employer submitted evidence that Worker worked in a real estate job in the ten years preceding the formal hearing and that the job has a specific vocational preparation level of five and is classified as light duty. This evidence is sufficient for a reasonable factfinder to conclude that Worker is not entitled to one point for training or vocational pursuit under Section 52-1-26.3.

**LOSS OF PHYSICAL CAPACITY**

{21}    Worker next argues that the WCJ erred by determining that Worker could perform light duty work and by not determining that Worker could only perform sedentary work. The WCJ found that Worker had a physical loss of capacity from heavy duty to light duty and assigned five modifier points pursuant to Section 52-1-26.4. Worker contends that the IME panel opined that Worker was only capable of performing sedentary work. Worker acknowledges that Dr. Gallardo testified that Worker was capable of performing light duty work, however, he contends that Dr. Gallardo's opinion is against logic and reason because Dr. Gallardo also stated that

14

Worker is unable to perform work that requires frequent bending, twisting, stooping, or squatting.

{22}     Worker accurately summarizes the testimony and evidence presented to the WCJ, including (1) the conflicting testimony between the IME panel's opinion that Worker can only perform sedentary work and Dr. Gallardo's opinion that Worker could perform light duty work; and (2) Dr. Gallardo's opinion that Worker could not perform work that requires frequent bending, twisting, stooping, or squatting. When reviewing for substantial evidence, we view the evidence in the light most favorable to the WCJ's findings, and it is the exclusive province of the WCJ to resolve inconsistencies in the testimony. *See Rodriguez*, 1997-NMCA-062, ¶ 23. Therefore, the WCJ was entitled to resolve the inconsistency between Dr. Gallardo's opinion and the IME panel.

{23}     Further, Worker's argument that Dr. Gallardo's opinion should not have been given credence because he also limited Worker from frequent bending, twisting, stooping, or squatting and these limitations are inconsistent with an opinion that Worker can perform light duty is not supported by the definition of light duty in the Act.  The Act defines light as

> the ability to lift up to twenty pounds occasionally or up to ten pounds
> frequently. Even though the weight lifted may be only a negligible
> amount, a job is in this category when it requires walking or standing to

> a significant degree or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls or both[.]

Section 52-1-26.4(C)(3). This definition is not inconsistent with Dr. Gallardo's restriction that Worker cannot bend, twist, stoop, or squat frequently and therefore does not render Dr. Gallardo's opinion invalid. Substantial evidence supports the WCJ's finding that Worker could perform light duty work.

**IMPAIRMENT RATING**

{24}     Worker argues that the WCJ erred in finding that Worker's combined whole person rating impairment was only 11%. Worker contends that Dr. Gallardo is the only authorized healthcare provider to assign an impairment rating and that he assigned Worker a 14% impairment rating. Employer concedes the issue and agrees that the only combined impairment rating assigned was by Dr. Gallardo and that it should have been 14%. We therefore remand this case to the WCJ to enter a modified compensation order reflecting a 14% impairment rating for Worker.

**CONCLUSION**

{25}     The WCJ's determination that Worker had a whole body impairment rating of 14% is not supported by substantial evidence. Accordingly, we remand for an entry of a modified compensation order.

{26}     **IT IS SO ORDERED.**

16

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

17